UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANAK ANARKAT, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CVS HEALTH CORPORATION, LARRY J. MERLO, and DAVID M. DENTON,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Janak Anarkat ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding CVS Health Corporation ("CVS Health" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired CVS Health securities between May 21, 2015 and February 20, 2019, both dates inclusive (the "Class Period"), seeking to recover

damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      CVS Health was founded in 1892 and is headquartered in Woonsocket, Rhode Island.  The Company was formerly known as CVS Caremark Corporation and changed its name to CVS Health Corporation in September 2014.  CVS Health, together with its subsidiaries, provides integrated pharmacy health care services, operating through its Pharmacy Services and Retail/LTC segments.

3.      As of December 31, 2017, CVS Health had twenty-three retail specialty pharmacy stores, eighteen specialty mail order pharmacies and four mail order dispensing pharmacies, and eighty-three branches for infusion and enteral services.  The Retail/LTC segment sells prescription drugs, over-the-counter drugs, beauty products and cosmetics, personal care products, convenience foods, seasonal merchandise, and greeting cards, as well as offers photo finishing services.  The Company has 9,803 retail stores in forty-nine states, the District of Columbia, Puerto Rico, and Brazil.

4.      On May 20, 2015, CVS Pharmacy, Inc. ("CVS Pharmacy"), a wholly owned subsidiary of CVS Health, entered into an Agreement and Plan of Merger (the "Merger Agreement") to acquire Omnicare, Inc. ("Omnicare"), a provider of pharmaceuticals and related pharmacy services to long-term care facilities and provider of specialty pharmacy and commercialization services for the bio-pharmaceutical industry (the "Omnicare Acquisition").  According to CVS Health's SEC filings, upon the effective date of the Omnicare Acquisition, each share of common stock, par value $1.00 per share, of Omnicare would be converted into the right

to receive $98.00 in cash, or approximately $10.6 billion in the aggregate.  In addition, CVS Pharmacy would assume approximately $2.3 billion in debt of Omnicare.

5.      On August 18, 2015, CVS Health acquired 100% of the outstanding common shares and voting interests of Omnicare for $98 per share for a total of $9.6 billion and assumed long-term debt with a fair value of approximately $3.1 billion.  Additionally, holders of Omnicare restricted stock units and performance based restricted stock units received 738,765 CVS Health restricted stock awards with a fair value of approximately $80 million as replacement awards. According to CVS Health's SEC filings, the Company acquired Omnicare to expand its operations in dispensing prescription drugs to assisted-living and long-term care facilities, and to broaden its presence in the specialty pharmacy business as it sought to serve a greater percentage of the growing senior patient population in the United States.

6.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) CVS Health's financial condition and expected earnings were deteriorating as a result of rising costs and poor results associated with the Omnicare Acquisition; and (ii) as a result, CVS Health's public statements were materially false and misleading at all relevant times.

7.      On February 20, 2019, CVS Health announced the Company's fourth quarter and full year financial and operating results and provided 2019 full year guidance.  CVS Health advised investors that adjusted earnings in 2019 would be $6.68 to $6.88 per share, compared with the $7.36 average of market estimates, citing rising costs and poor results related to the Company's 2015 acquisition of Omnicare.

8.      Following this news, CVS Health's stock price fell by $5.66 per share, or slightly over 8%, to close at $64.22 per share on February 20, 2019.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to §§ 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

12.     Venue is proper in this Judicial District pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  CVS securities trade on the NYSE, located within this Judicial District.

13.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

14.     Plaintiff, as set forth in the attached Certification, acquired CVS Health securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant CVS Health is a Delaware corporation with its principal executive offices located at One CVS Drive, Woonsocket, Rhode Island.  CVS Health's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "CVS."

16.     Defendant Larry J. Merlo ("Merlo") has served as CVS Health's President and Chief Executive Officer ("CEO") at all relevant times.

17.     Defendant David M. Denton ("Denton") has served as CVS Health's Executive Vice President and Chief Financial Officer ("CFO") at all relevant times.

18.     The Defendants referenced above in ¶¶ 16-17 are sometimes referred to herein as the "Individual Defendants."

19.     The Individual Defendants possessed the power and authority to control the contents of CVS Health's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

20.     CVS Health was founded in 1892 and is headquartered in Woonsocket, Rhode Island.  The Company was formerly known as CVS Caremark Corporation and changed its name

to CVS Health Corporation in September 2014.  CVS Health, together with its subsidiaries, provides integrated pharmacy health care services, operating through its Pharmacy Services and Retail/LTC segments.

21.     As of December 31, 2017, CVS Health had twenty-three retail specialty pharmacy stores, eighteen specialty mail order pharmacies and four mail order dispensing pharmacies, and eighty-three branches for infusion and enteral services.  The Retail/LTC segment sells prescription drugs, over-the-counter drugs, beauty products and cosmetics, personal care products, convenience foods, seasonal merchandise, and greeting cards, as well as offers photo finishing services.  The Company has 9,803 retail stores in forty-nine states, the District of Columbia, Puerto Rico, and Brazil.

22.     On May 20, 2015, CVS Pharmacy, a wholly owned subsidiary of CVS Health, entered into the Merger Agreement to acquire Omnicare, a provider of pharmaceuticals and related pharmacy services to long-term care facilities and provider of specialty pharmacy and commercialization services for the bio-pharmaceutical industry.  According to CVS Health's SEC filings, upon the effective date of the Omnicare Acquisition, each share of common stock, par value $1.00 per share, of Omnicare would be converted into the right to receive $98.00 in cash, or approximately $10.6 billion in the aggregate.  In addition, CVS Pharmacy would assume approximately $2.3 billion in debt of Omnicare.

23.     On August 18, 2015, CVS Health acquired 100% of the outstanding common shares and voting interests of Omnicare for $98 per share for a total of $9.6 billion and assumed long-term debt with a fair value of approximately $3.1 billion.  Additionally, holders of Omnicare restricted stock units and performance based restricted stock units received 738,765 CVS Health restricted stock awards with a fair value of approximately $80 million as replacement awards.

According to CVS Health's SEC filings, the Company acquired Omnicare to expand its operations in dispensing prescription drugs to assisted-living and long-term care facilities, and to broaden its presence in the specialty pharmacy business as it sought to serve a greater percentage of the growing senior patient population in the United States.

**Materially False and Misleading Statements Issued During the Class Period**

24.    The Class Period begins on May 21, 2015, when CVS Health issued a press release announcing CVS Health's acquisition of Omnicare (the "May 2015 Press Release").  The May 2015 Press Release was attached as an exhibit to CVS Health's Form 8-K, signed by Defendant Denton, and filed with the SEC on the same date.  The May 2015 Press Release touted the Omnicare Acquisition as a significant foothold with respect to expanding the Company's business throughout multiple markets related to pharmaceutical care, stating, in relevant part:

> With the acquisition of Omnicare, CVS Health will significantly expand its ability to dispense prescriptions in assisted living and long term care facilities, serving the senior patient population. CVS Health will also expand its presence in the rapidly growing specialty pharmacy business. Omnicare's complementary specialty pharmacy platform and clinical expertise will augment CVS Health's capabilities and enable CVS Health to continue to provide innovative and cost-effective solutions to patients and payors.

> * * *

> CVS Health expects to achieve significant purchasing and revenue synergies as well as operating efficiencies from this combination. The company expects the transaction to be approximately 20 cents accretive to Adjusted EPS in 2016, its first full year, excluding integration and any one-time transaction costs. It is expected to become increasingly accretive to Adjusted EPS in subsequent years. The company has secured $13 billion in fully committed unsecured bridge financing from Barclays and expects to put in place permanent financing in the form of senior notes and/or term loans prior to the closing of the transaction. CVS Health expects that it will continue to have a solid balance sheet and, with its strong free cash flow, is committed to returning to its targeted leverage ratio of 2.7 times adjusted debt-to-EBITDA.

> * * *

7

Given the aging U.S. population, long term care is a growth segment of the health care system. More people are expected to use assisted living facilities and independent living communities in the coming decades, creating a substantial growth opportunity for those companies serving the health care needs of seniors.

In entering this new customer distribution channel, CVS Health will deliver meaningful benefits to consumers, patients, caregivers, and payors by providing highly coordinated clinical pharmacy care across multiple treatment settings from retail to long term care. CVS Health will help improve patient outcomes and provide enhanced continuity of care to patients and caregivers as they transition through the health care system.

25.     In the same press release, CVS Health's CEO, Defendant Merlo, parroted the May 2015 Press Release's assertions that the Omnicare Acquisition would "significantly expand[]" the Company's business, stating, in relevant part:

The acquisition of Omnicare significantly expands our business, providing CVS Health access into a new pharmacy dispensing channel . . . . It also creates new opportunities for us to extend our high-quality, innovative pharmacy programs to a broader population of seniors and chronic care patients as they transition across the care continuum. We have been impressed by the Omnicare team and what they have created for the patients they serve.

26.     On February 9, 2016, CVS Health filed its Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the fiscal year ended December 31, 2015 (the "2015 10-K"). For 2015, CVS Health reported a net income of $5.237 billion, or $4.63 per diluted share, attributable to CVS Health on net revenue of $153.29 billion, compared to a net income of $4.644 billion, or $3.96 per diluted share, attributable to CVS Health on net revenue of $139.367 billion for 2014.

27.     The 2015 10-K highlighted the purported benefits of the Omnicare Acquisition on CVS Health's business, including an expanded market for the Company's services and enhanced tools to meet that expanded market's needs, stating, in relevant part:

On August 18, 2015, we completed our acquisition of Omnicare, broadening our base of pharmacy care to a new dispensing channel, long-term care pharmacy. Omnicare's long-term care ("LTC") operations include the distribution of

8

pharmaceuticals, related pharmacy consulting and other ancillary services to chronic care facilities and other care settings. Omnicare also provides commercialization services under the name RxCrossroads®. LTC is comprised of 143 spoke pharmacies that primarily handle new prescription orders, of which 32 are also hub pharmacies that use automation to support spoke pharmacies with refill prescriptions . . . . With the addition of the LTC operations, we are enhancing our service offerings to address the needs of an aging population throughout the continuum of senior care.

* * *

*Long-term Care* - Through our Omnicare business, we provide the distribution of pharmaceuticals, related pharmacy consulting and other ancillary services to chronic care facilities and other care settings. LTC's customers consist of skilled nursing facilities, assisted living facilities, independent living communities, hospitals, correctional facilities, and other health care service providers. We provide pharmacy consulting, including monthly patient drug therapy evaluations, assist in compliance with state and federal regulations and provide proprietary clinical and health management programs. We also provide pharmaceutical case management services for retirees, employees and dependents who have drug benefits under corporate-sponsored health care programs.

28.     Appended as exhibits to the 2015 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), in which the Individual Defendants "certif[ied] that, to the best of [their] knowledge:  (1) The [2015 10-k] fully complies with the requirements of Section 13(a) or 15(d) of the Exchange Act; and (2) The information contained in the [2015 10-K] fairly presents, in all material respects, the financial condition and result of operations of the Company."

29.     On February 9, 2017, CVS Health filed its Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the fiscal year ended December 31, 2016 (the "2016 10-K").  For 2016, CVS Health reported a net income of $5.317 billion, or $4.9 per diluted share, attributable to CVS Health on net revenue of $177.526 billion, compared to a net income of $5.237 billion, or $4.63 per diluted share, attributable to CVS Health on net revenue of $153.29 billion for 2015.

30.     The 2016 10-K highlighted the purported benefits of the Omnicare Acquisition on

CVS Health's business, such as an expanded market to provide the Company's services to, and

enhanced tools to meet that expanded market's needs, stating, in relevant part:

> Our acquisition of Omnicare broadened our base of pharmacy care to an additional
> dispensing channel, long-term care pharmacy. Omnicare's long-term care ("LTC")
> operations include the distribution of pharmaceuticals, related pharmacy consulting
> and other ancillary services to chronic care facilities and other care settings.
> Omnicare also provides commercialization services under the name
> RxCrossroads®. LTC is comprised of 152 spoke pharmacies that primarily handle
> new prescription orders, of which 32 are also hub pharmacies that use automation
> to support spoke pharmacies with refill prescriptions . . . . With the addition of the
> LTC operations, we are continuing to enhance our service offerings to further
> address the needs of an aging population throughout the continuum of senior care.
>
> * * *
>
> *Long-term Care* - Through our Omnicare business, we provide the distribution of
> pharmaceuticals, related pharmacy consulting and other ancillary services to
> chronic care facilities and other care settings. LTC's customers consist of skilled
> nursing facilities, assisted living facilities, independent living communities,
> hospitals, correctional facilities, and other health care service providers. We
> provide pharmacy consulting, including monthly patient drug therapy evaluations,
> assist in compliance with state and federal regulations and provide proprietary
> clinical and health management programs. We also provide pharmaceutical case
> management services for retirees, employees and dependents who have drug
> benefits under corporate-sponsored health care programs.

31.     Appended as exhibits to the 2016 10-K were signed SOX certifications, in which

the Individual Defendants "certif[ied] that, to the best of [their] knowledge: (1) The [2016 10-K]

fully complies with the requirements of Section 13(a) or 15(d) of the Exchange Act; and (2) The

information contained in the [2016 10-K] fairly presents, in all material respects, the financial

condition and result of operations of the Company."

32.     On February 14, 2018, CVS Health filed its Annual Report on Form 10-K with the

SEC, announcing the Company's financial and operating results for the fiscal year ended

December 31, 2017 (the "2017 10-K"). For 2017, CVS Health reported a net income of $6.622

10

billion, or $6.44 per diluted share, attributable to CVS Health on net revenue of $184.765 billion, compared to a net income of $5.317 billion, or $4.9 per diluted share, attributable to CVS Health on net revenue of $177.526 billion for 2016.

33.   The 2017 10-K highlighted the purported benefits of the Omnicare Acquisition on CVS Health's business, including an expanded market for the Company's services and enhanced tools to meet that expanded market's needs, stating, in relevant part:

> Our acquisition of Omnicare broadened our base of pharmacy care to an additional dispensing channel, long-term care pharmacy. Omnicare's LTC operations include the distribution of pharmaceuticals, related pharmacy consulting and other ancillary services to chronic care facilities and other care settings. Omnicare also provided commercialization services under the name RxCrossroads until January 2, 2018, when we completed the sale of RxCrossroads. LTC is comprised of 145 spoke pharmacies that primarily handle new prescription orders, of which 30 are also hub pharmacies that use automation to support spoke pharmacies with refill prescriptions . . . . With the addition of the LTC operations, we are continuing to enhance our service offerings to further address the needs of an aging population throughout the continuum of senior care.
>
> * * *
>
> *Long-term Care -* Through our Omnicare business, we provide the distribution of pharmaceuticals, related pharmacy consulting and other ancillary services to chronic care facilities and other care settings. Omnicare's customers consist of skilled nursing facilities, assisted living facilities, independent living communities, hospitals, correctional facilities, and other health care service providers. We provide pharmacy consulting, including monthly patient drug therapy evaluations, assist in compliance with state and federal regulations and provide proprietary clinical and health management programs. We also provide pharmaceutical case management services for retirees, employees and dependents who have drug benefits under corporate-sponsored health care programs.

34.   Appended as exhibits to the 2017 10-K were signed SOX certifications, in which the Individual Defendants "certif[ied] that, to the best of [their] knowledge:  (1)The [2017 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the Exchange Act; and (2)The information contained in the [2017 10-K] fairly presents, in all material respects, the financial condition and result of operations of the Company."

11

35.     The statements referenced in ¶¶ 24-34 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) CVS Health's financial condition and expected earnings were deteriorating as a result of rising costs and poor results associated with the Omnicare Acquisition; and (ii) as a result, CVS Health's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

36.     On February 20, 2019, CVS Health issued a press release announcing the Company's fourth quarter and full year financial and operating results and provided 2019 full year guidance (the "February 2019 Press Release").   CVS Health advised investors that adjusted earnings in 2019 would be $6.68 to $6.88 per share, compared with the $7.36 average of market estimates, citing rising costs and poor results related to the Company's 2015 acquisition of Omnicare.

37.     Specifically, with regard to Omnicare, the February 2019 Press Release stated, in relevant part:

> The LTC business has continued to experience industry wide challenges that have impacted our ability to grow the business at the rate that was originally estimated when the Company acquired Omnicare, Inc. in 2015. These challenges include lower occupancy rates in skilled nursing facilities, significant deterioration in the financial health of numerous skilled nursing facility customers which resulted in a number of customer bankruptcies in 2018, and continued facility reimbursement pressures. As a result of these challenges, a goodwill impairment charge of $3.9 billion was recorded during the second quarter of 2018. During the fourth quarter of 2018, the LTC reporting unit missed its forecast primarily due to operational issues and customer liquidity issues, including one significant customer bankruptcy. Additionally, LTC management submitted an updated final budget for 2019 which showed significant additional deterioration in the reporting unit's projected financial results for 2019 compared to the analysis performed in the second quarter of 2018, primarily due to continued industry and operational

challenges, which also caused management to make further updates to their long term forecast beyond 2019. Based on these updated financial projections, management determined that there were indicators that the goodwill of the LTC business may be further impaired, and accordingly, an interim goodwill impairment test was performed as of December 31, 2018. The results of the impairment test showed that the fair value of the LTC business was lower than the carrying value resulting in a $2.2 billion goodwill impairment charge. In addition to the lower financial projections, lower market multiples of the peer group companies contributed to the amount of the goodwill impairment charge.

38.    The negative impacts of the Omnicare Acquisition were noted throughout the February 2019 Press Release:

- In two footnotes concerning acquisition-related transaction and integration costs for the Company's unaudited adjusted operating income and earnings per share, CVS Health stated that "[i]n 2018 and 2017, acquisition-related transaction and integration costs relate to *the acquisitions of* Aetna and *Omnicare*" (emphasis added).

- In a footnote relating to operating income (loss) for the three months ended December 31, 2018, CVS Health stated:

    Retail/LTC segment operating income (loss) for the three months and year ended December 31, 2018 include goodwill impairment charges of $2.2 billion and $6.1 billion, respectively, related to the LTC reporting unit. Retail/LTC segment operating income (loss) for the three months and year ended December 31, 2018 also include a $43 million loss on impairment of long-lived assets primarily related to the impairment of property and equipment. Retail/LTC segment operating income for the year ended December 31, 2018 also includes an $86 million loss on the divestiture of the Company's RxCrossroads subsidiary *and $7 million of acquisition-related integration costs related to the acquisition of Omnicare*.

    (Emphasis added).

- In a footnote relating to operating income (loss) for the three months ended December 31, 2017, CVS Health stated:

    Retail/LTC segment operating income for the three months and year ended December 31, 2017 include $4 million and $215 million, respectively, of charges associated with store closures. Retail/LTC segment operating income for the three months and year ended December 31, 2017 include goodwill impairment charges

of $46 million and $181 million, respectively, related to the RxCrossroads reporting unit. Retail/LTC segment operating income for the year ended December 31, 2017 includes *$34 million of acquisition-related integration costs related to the acquisition of Omnicare*.

* * *

Corporate/Other segment operating loss for the three months and year ended December 31, 2017 *each include $34 million in acquisition-related transaction costs related to the acquisitions of* Aetna and *Omnicare* and $9 million of transaction costs related to the divestiture of RxCrossroads, which are included in operating expenses in the condensed consolidated statement of operations. Corporate/Other segment operating loss for the year ended December 31, 2017 also includes a $3 million reduction in integration costs for a change in estimate related to the acquisition of Omnicare, which is included in operating expenses in the condensed consolidated statement of operations.

(Emphasis added).

- In a footnote relating to the Retail/LTC segment's performance for the respective periods,

    specifically, the cost of products sold, CVS Health stated:

    Cost of products sold for the three months ended December 31, 2017 includes a $5 million reduction in integration costs for a change in estimate. Cost of products sold for the year ended December 31, 2017 includes $2 million of acquisition-related integration costs. *Those integration costs are related to the acquisition of Omnicare.*

    (Emphasis added).

- In a footnote relating to the Retail/LTC segment's performance for the respective periods,

    specifically, operating expenses, CVS Health stated:

    Operating expenses for the year ended December 31, 2018 includes $7 million of acquisition-related integration costs. Operating expenses for the three months and year ended December 31, 2017 include $5 million and $32 million, respectively, of acquisition-related integration costs. *Those integration costs are related to the acquisition of Omnicare.*

    (Emphasis added).

39.    On the same day, *Fortune* published an article titled "CVS Stock Plummets as 2019 Looks Like It Will Be a 'Major Disappointment' for Investors," which stated, in relevant part:

14

The company announced a $2.2 billion writedown on its 2015 takeover of Omnicare, a $12.9 billion deal that was meant to build the company's business serving patients in nursing homes and long-term medical-care facilities.

But that business hasn't grown as expected. There are fewer patients in long-term care facilities, which caused a number of CVS's customers to go bankrupt last year.

The $2.2 billion Omnicare charge follows an earlier, $3.9 billion writedown CVS took on the business in the second quarter. Together, they add up to half of what the company paid for Omnicare three years ago. The unit is predicting more challenges in the future, CVS said.

40.     The *Fortune* article also quoted Evercore ISI analyst Ross Muken, who noted that not only was the February 2019 Press Release's 2019 guidance a "major disappointment," but it would also "stoke fears" that the Company's $68 billion purchase of insurer Aetna the year before "was defensive in nature."

41.     An article published by *The Motley Fool* the same day, titled "What's Behind CVS Health's Fourth-Quarter Loss?," also noted Omnicare's "spotlight" in the February 2019 Press Release, "and not for a good reason."  According to the article, despite "relatively good news" that came out of the press release, "CVS Health still posted a net loss of $421 million in the fourth quarter" because "[t]he company recorded a goodwill impairment charge of $2.2 billion in the fourth quarter (and $6.1 billion for the full year) related to its struggling LTC pharmacy unit . . . . CVS Health noted that its Omnicare LTC business continues to face multiple challenges.  These issues include lower occupancy rates in skilled nursing facilities (SNF), reimbursement pressures on LTC facilities, and a significant deterioration in the financial health of SNF customers."

42.     Following this news, CVS Health's stock price fell by $5.66 per share, or slightly over 8%, to close at $64.22 per share on February 20, 2019.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired CVS Health securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

44.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, CVS Health securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by CVS Health or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

45.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

46.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

47.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of CVS Health;

- whether the Individual Defendants caused CVS Health to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of CVS Health securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

48.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

49.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- CVS Health securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold CVS Health securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

50. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

51. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

52. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

53. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

54. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under

which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of CVS Health securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire CVS Health securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

55.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for CVS Health securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about CVS Health's finances and business prospects.

56.     By virtue of their positions at CVS Health, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

57.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of CVS Health, the Individual Defendants had knowledge of the details of CVS Health's internal affairs.

58.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of CVS Health.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to CVS Health's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of CVS Health securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning CVS Health's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired CVS Health securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

59.     During the Class Period, CVS Health securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of CVS Health securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or

otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of CVS Health securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of CVS Health securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

60.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

62.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

63.     During the Class Period, the Individual Defendants participated in the operation and management of CVS Health, and conducted and participated, directly and indirectly, in the conduct of CVS Health's business affairs.  Because of their senior positions, they knew the adverse non-public information about CVS Health's misstatement of income and expenses and false financial statements.

64.     As officers and/or directors of a publicly owned company, the Individual
Defendants had a duty to disseminate accurate and truthful information with respect to CVS
Health's financial condition and results of operations, and to correct promptly any public
statements issued by CVS Health which had become materially false or misleading.

65.     Because of their positions of control and authority as senior officers, the Individual
Defendants were able to, and did, control the contents of the various reports, press releases and
public filings which CVS Health disseminated in the marketplace during the Class Period
concerning CVS Health's results of operations.  Throughout the Class Period, the Individual
Defendants exercised their power and authority to cause CVS Health to engage in the wrongful
acts complained of herein.  The Individual Defendants, therefore, were "controlling persons" of
CVS Health within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they
participated in the unlawful conduct alleged which artificially inflated the market price of CVS
Health securities.

66.     Each of the Individual Defendants, therefore, acted as a controlling person of CVS
Health.  By reason of their senior management positions and/or being directors of CVS Health,
each of the Individual Defendants had the power to direct the actions of, and exercised the same
to cause, CVS Health to engage in the unlawful acts and conduct complained of herein.  Each of
the Individual Defendants exercised control over the general operations of CVS Health and
possessed the power to control the specific activities which comprise the primary violations about
which Plaintiff and the other members of the Class complain.

67.     By reason of the above conduct, the Individual Defendants are liable pursuant to
Section 20(a) of the Exchange Act for the violations committed by CVS Health.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 25, 2019

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
ahood@pomlaw.com
jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181

Facsimile:   (312) 377-1184
Email:  pdahlstrom@pomlaw.com

***Attorneys for Plaintiff***

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.   I, JANAK ANARKAT _____, make this

declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section

21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities

Litigation Reform Act of 1995.

2. I have reviewed a Complaint against CVS Health Corporation ("CVS" or the "Company"), and

authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire CVS securities at the direction of plaintiffs counsel, or in order to

participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or

acquired CVS securities during the class period, including providing testimony at deposition and trial, if

necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in CVS

securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not

sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set

forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses

directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed  February 21, 2019
                    **(Date)**

_____
                    **(Signature)**

JANAK  ANARKAT
                    **(Type or Print Name)**

{00314022;1 }

**CVS Health Corporation ("CVS")**                                      **Anarkat, Janak**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 1/31/2019 | Purchase | 150 | $66.0000 |
| 2/14/2019 | Purchase | 175 | $67.8900 |
| 2/20/2019 | Purchase | 100 | $63.9500 |